FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 09, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATHLEEN FRALEY,<br><br>    Plaintiffs,<br><br>v.<br><br>ENCOMPASS INDEMNITY COMPANY, a Illinois corporation,<br><br>    Defendant. | NO. 2:24-CV-0278-TOR<br><br>ORDER GRANTING PARTIAL SUMMARY JUDGMENT, MOTION FOR EXTENSION OF TIME, AND MOTION TO EXPEDITE |

BEFORE THE COURT are Plaintiff's Motion for Partial Summary Judgment (ECF No. 16), Defendant's Motion for Extension of Time (ECF No. 21), and Defendant's Motion to Expedite (ECF No. 20). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's Motion for Partial Summary Judgment (ECF No. 16) is **GRANTED**, Defendant's Motion for Extension of Time (ECF No. 21) is **GRANTED**, and Defendant's Motion to Expedite (ECF No. 20) is **GRANTED**.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT, MOTION FOR EXTENSION OF TIME, AND MOTION TO EXPEDITE ~ 1

## BACKGROUND

This case arises out of the destruction of Plaintiff's home after it was burned down on August 18, 2023, by a wildfire, the Gray Fire, started near Medical Lake, WA. ECF No. 1 at ¶ 10. Plaintiff's home was insured by Defendant Encompass Indemnity Company ("Encompass"). *Id.* at ¶ 8. Plaintiff reported the loss to Encompass on August 19, 2023. *Id.* at ¶ 11. The parties do not dispute that the wildfire was a covered peril under Plaintiff's policy with Encompass, and she is entitled to coverage for the loss of her home. *Id.* at ¶12. Plaintiff now brings claims against Encompass alleging breach of contract, violation of the Washington Consumer Protection Act, RCW § 19.86, bad faith, violation of the Insurance Fair Conduct Act, RCW § 48.30, and negligent claim handling. *Id.*

## DISCUSSION

As an initial matter, Defendant filed an untimely response to Plaintiff's motion and now moves for an expedited, after the fact, extension of time to file its response. ECF Nos. 20, 21. Plaintiff agreed to stipulate to the motion so that the issue may be decided on the merits. ECF No. 21 at 4. Therefore, the Court grants Defendant's motion for extension of time to file a response and the associated motion to expedite.

Plaintiff moves for summary judgment only as to the application of the Estimated Residence Value Adjustment ("ERVA") coverage provision within her policy with Encompass. The parties disagree on how the provision is to be interpreted and applied.

### 1. Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248.

//

2. Analysis

Although Defendant challenges the relevance of certain facts submitted by Plaintiff, the parties agree on the facts essential to the disposition of the current motion before the Court.  The parties do not dispute that Plaintiff's policy with Encompass for her home included ERVA coverage.  The issue presented boils down to a pure question of policy interpretation which is a question of law appropriate for summary judgment.  *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash. 2d 724, 730 (1992).

Under Washington law, the terms of a policy must be construed by a court as a whole and should be given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Sears v. Grange Ins. Ass'n*, 111 Wash. 2d 636, 638 (1988).  "If the language on its face is fairly susceptible to two different but reasonable interpretations, the contract is ambiguous, and the court must attempt to discern and enforce the contract as the parties intended." *Feenix Parkside LLC v. Berkley N. Pac.*, 8 Wash. App. 2d 381, 386 (2019).  However, Washington law requires ambiguities be construed in the insured's favor.  *Id.*

The ERVA coverage provisions at issue here are located in H41-C, Amendment of Elite Home Provisions, under section two of Limit of Liability. ECF No. 11-13.  Section two states that if at the time of a covered loss the insured

    a. Maintained coverage on the dwelling at 100% of its replacement cost as determined by our estimate completed and based on the accuracy of information you furnished, or confirmed for, us;

    b. Accepted the General Provisions-Home, 18. Estimated Residence Value Adjustment provision, agree to accept each annual adjustment in the estimated residence value shown on the Coverage Summary, and pay any additional premium charged; and

    c. Notified us within 90 days of the start of any alterations to the covered real property which increases the replacement cost of the dwelling by 5% or more;

then, if at the time of a covered loss the estimated residence value indicated on the Coverage Summary is less than the current replacement cost for the covered dwelling, we will:

    a. Increase the estimated residence value indicated on the Coverage Summary available for the covered dwelling loss to equal the then current replacement cost of the dwelling;

    b. Increase the Property Location Limit to reflect the same percentage of the new estimated residence value as calculated under provision a. above.

    Under no circumstance will the new adjusted Property Location Limit reflect a higher percentage of the new estimated residence value than the percentage shown on the Coverage Summary as the location limit percentage; and

    c. Adjust the Segment premium from the time of loss for the remainder of this policy period based on the increased limit of liability.

Current replacement cost does not include any additional costs necessary to comply with any ordinance or law that regulates the construction, repair or demolition of the real property.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT, MOTION FOR EXTENSION OF TIME, AND MOTION TO EXPEDITE ~ 5

The parties do not dispute that Plaintiff met the three prerequisites; the dispute is only on the narrow issue of when the adjustment in the estimated residence value occurs. Plaintiff contends that any adjustment in the estimated residence value occurred at the time of the loss, i.e., on August 18, 2023, when her house burned down, thus obligating Defendant to adjust and payout the higher estimated residence value. ECF No. 16 at 15. Defendant argues the adjustment does not apply until after the house is rebuilt. ECF No. 18 at 6. Defendant contends sections three and four following section two permits but one reasonable interpretation of section two. *Id.* Sections three and four state as follows:

> 3. We will pay no more than the estimated residence value shown on the Coverage Summary until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the replacement cost provisions above.
>
> 4. In the event you replace the dwelling at a location other than the location of the loss, we will pay no more than the estimated residence value shown on the Coverage Summary for equivalent construction and use as the original residence premises.

Defendant argues Plaintiff's interpretation is inconsistent with section three's language that once the replacement is complete Encompass "will settle the loss according to the replacement cost provisions above." *Id.* Defendant explains that viewing all sections as a whole, the adjusted estimated residence value is only owed if once the property is rebuilt the actual cost exceeds the estimated cost indicated on the Coverage Summary which is the undisputed $778,188.00. ECF

No. 18 at 7-8.  However, if Plaintiff were to choose to not rebuild, then Encompass would only be obligated to pay out that listed estimated residence value of $778,188.00.  *Id.* at 8.  The enhanced coverage only applies "if and when" the property is rebuilt.  *Id.*

Plaintiff responds that section three is referring to the cost replacement provisions of section one not the ERVA coverage afforded in section two.  Section one covering settling payment states:

> 1. Payment will not exceed the smallest of:
>
>    a. The amount that we could reasonably be expected to pay to repair or replace the damaged, destroyed or stolen real property with materials of like kind and quality for similar use on the same residence premises;
>
>    b. The amount actually and necessarily spent to repair or replace the damaged, destroyed or stolen real property with materials of like kind and quality for similar use on the same residence premises;
>
>    c. Any applicable limits shown on your Coverage Summary for items listed under provision 2. or 3. of the Real Property-Insuring Agreement; or
>
>    d. The Property Location Limit Shown on the Coverage Summary.

Plaintiff also argues section 2.c is dispositive on the issue because it states Encompass will adjust the premium paid "from the time of loss for the remainder of this policy period based on the increased limit of liability."  ECF No. 19 at 8.  Thus, it would be illogical to allow Encompass to retroactively collect a higher

ORDER GRANTING PARTIAL SUMMARY JUDGMENT, MOTION FOR EXTENSION OF TIME, AND MOTION TO EXPEDITE ~ 7

1  premium from the date of loss yet claim the additional coverage does not apply
2  until after the house is built.  *Id.* at 9.  Plaintiff additionally argues an increase of
3  the estimated residence value at the time of loss would provide a fixed amount of
4  the total Property Location Limit ("PLL") prior to any rebuild providing Plaintiff
5  with some certainty in any planning.  *Id.* at 9.  Otherwise, Plaintiff would not know
6  her available limits or what settlement option listed in section one would be
7  applicable prior to reconstruction.  *Id.* at 10.
8       In reviewing the applicable provisions, the Court finds that while section
9  three does create some ambiguity with its lack of reference to a specific provision,
10 the policy as a whole is unambiguous and requires the adjustment to occur at the
11 time of loss.  Section two clearly states that Encompass will "increase the
12 estimated residence value indicated on the Coverage Summary" to match what the
13 replacement cost would have been at the time of the loss.  ECF No. 11-13 at 3.
14 Further, the Court agrees with Plaintiff that the language of 2.c cannot be
15 reconciled with Defendant's reasoning.  Under Defendant's interpretation, Plaintiff
16 could be retroactively charged a higher premium from the date the loss "based on
17 the increased liability" yet Defendant would only be obligated to pay out the
18 estimated value of the residence at the lower liability amount if Plaintiff chose not
19 to rebuild.  Thus, Plaintiff must meet an additional prerequisite to receive the
20 benefit of the enhanced coverage—she must actually rebuild the dwelling in the

ORDER GRANTING PARTIAL SUMMARY JUDGMENT, MOTION FOR EXTENSION OF TIME, AND MOTION TO EXPEDITE ~ 8

same location.  This is contrary to the language of section two which clearly states what conditions must be met for ERVA coverage to apply and is devoid of such requirements.  Rather the more reasonable interpretation is that the estimated residence value listed on the Summary Coverage, and the PLL, increased at the time of the loss.

Defendant's argument that the replacement cost value is only owed when the actual cost to rebuild is greater than the estimated residence value is also contrary to the language of the provision.  Section two raises the estimated residence value to match the *then current* replacement cost *at the time of the covered loss* if it is higher than the indicated estimated residence value, not at the time the house is actually rebuilt.  ECF No. 11-13 at 3.  Moreover, the language that the *estimated* residence value is increased to equal the then replacement cost is also contrary to Defendant's interpretation.  Section 2.b further reiterates this point with the language that the PLL is increased to reflect the *new* estimated residence value as calculated in 2.a.  *Id.*  All of this language would be rendered superfluous under Defendant's reasoning that Encompass need only honor the enhanced coverage once the actual replacement occurs.  *Matthews v. Penn-America Ins. Co.*, 106 Wash. App. 745, 749 (2001) ("[W]e construe the language of an insurance policy to give meaning to all the words of the policy if possible.").  An average person would not read these provisions and conclude the enhanced coverage obligates

1  Encompass to only pay the difference between the original estimated residence
2  value on the Coverage Summary and the actual cost to rebuild once the home is
3  replaced.
4       Finally, Defendant's reasoning that its interpretation is correct because
5  Encompass cannot know what amount to pay as a replacement cost without
6  rebuilding does not coincide with earlier provisions under section two.  The first
7  prerequisite for ERVA coverage requires the insured maintain "coverage on the
8  dwelling at 100% of its replacement cost as determined by our estimate
9  completed."  ECF No. 11-13 at 2.  And the third requires an insured to notify
10 Encompass "within 90 days of the start of any alterations to the covered real
11 property which increase the replacement cost of the dwelling by 5% or more."
12 ECF No. 11-13 at 3.  It is unquestionably unreasonable to assume the only way
13 Encompass could know if an alteration increased the replacement cost of real
14 property by 5% is to actually rebuild it.  Rather it would be the estimated
15 replacement cost as contemplated in the first prerequisite.  Therefore, it follows the
16 replacement cost of the residence at the time of loss would be an estimate.
17      The Court also agrees with Plaintiff that any certainty on coverage afforded
18 by a Coverage Summary would be heavily diminished under Defendant's
19 interpretation.  The Coverage Summary provides the PLL an insured can expect as
20 coverage in the event of a total loss, and the PLL cannot be calculated without an

1  estimated residence value.  ECF No. 11-12 at 8.  If the Court interprets the

2  enhanced coverage provisions as Defendant requests, the Coverage Summary

3  would be rendered useless after a total loss because an insured would have no way

4  of knowing the available PLL until their home was rebuilt.  Rather the reasonable

5  interpretation is that both the estimated residence value and corresponding PLL are

6  adjusted at the time of the loss as the provision's language requires.

7       Therefore, the Court concludes the enhanced coverage provisions

8  unambiguously require that the estimated residence value indicated on the

9  Coverage Summary be increased at the time of loss based on the estimated

10 replacement cost of the home at that time if it is higher than the prior estimated

11 residence value.  The estimated residence value as applied by sections three and

12 four would also reflect any adjustment.  Encompass will pay no more than the

13 adjusted estimated residence value until the actual replacement is complete in

14 accordance with section three.  Settlement of the loss after replacement is complete

15 are according to the payment limitations of section one.

16 //

17 //

18 //

19 //

20 //

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 16) is **GRANTED**.

2. Defendant's Motion for Extension of Time (ECF No. 21) is **GRANTED**.

3. Defendant's Motion to Expedite (ECF No. 20) is **GRANTED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED May 9, 2025.



THOMAS O. RICE
United States District Judge